

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MORRIS POLLARD, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) No.04 C 7946 ) |
| UNIVERSITY OF CHICAGO, | ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Morris Pollard brought this action against the University of Chicago, alleging claims of negligence and premises liability for the injuries he sustained on the University campus when he allegedly ran into a concrete bollard placed on the perimeter of an open plaza. Defendant initially filed for summary judgment on November 9, 2005, arguing that plaintiff could not prove proximate causation as he was unsure that the bollard caused his injuries. In an order dated December 23, 2005, we denied that motion, finding that a reasonable jury could believe it was a bollard on defendant's property that caused plaintiff's injuries. Defendant now renews its motion for summary judgment, arguing that plaintiff cannot prove that it had a duty towards plaintiff regarding an open and obvious hazard such as a waist-high bollard. For the reasons stated below, we deny defendant's motion for summary judgment.

## BACKGROUND

The following factual background is based on the statements submitted by the parties pursuant to Local Rule 56, and for purposes of the summary judgment motion we construe the facts in plaintiff's favor. *See* <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 157 (1970); <u>Bledsoe v. City of Chicago</u>, 1996 WL 406647, *2 (N.D.Ill.1996) (stating that only reasonable inferences, not all conceivable inferences, will be drawn in favor of non-moving party).

On October 23, 2003, plaintiff, an Indiana resident and professor at the University of Notre Dame, traveled to the University of Chicago to work collaboratively on a research project taking place at the University of Chicago's laboratory facilities. On that day he traveled with his colleagues, Dr. Mark Suckow and Mr. William Wolter, to the University to work with Dr. Chadentree Haney and Dr. Howard Halpern. Plaintiff and his colleagues arrived at the University campus sometime in the afternoon, and worked for several hours in the laboratory with Drs. Haney and Halpern. Prior to that date plaintiff had traveled to the University of Chicago on at least one other occasion – in September 2003 – to work with Dr. Haney in the same or a nearby laboratory.

Upon finishing their work in the laboratory on October 23, 2003, plaintiff invited his colleagues to join him for dinner at the Quadrangle Club, also located on the University campus. As Dr. Suckow went to retrieve the car from a nearby lot, plaintiff exited the building with Dr. Haney and Wolter. The group exited out of the University's Surgery Brain Research Pavilion ("SBRP"), located at 5812 South Ellis Avenue, into the SBRP Plaza – land also owned by defendant. Dr. Haney and Wolter walked ahead of plaintiff, who was carrying a box of specimens from the research the group had just completed.

According to plaintiff, the group left the SBRP at approximately 7:30 p.m., more than two and-a-half hours after the sun had set and an hour after twilight had ended. Plaintiff recalls that the area was dark, and the SBRP Plaza was not illuminated by the large light fixtures usually lighting the area. Although plaintiff did not remark on the darkness, he remembers it as "pitch-black," such that he "couldn't see anything" (def's 56.1 statement, ex. A, p. 61: 8, 25). While walking through the SBRP Plaza, plaintiff's lower extremities collided with a waist-high fixed object. Plaintiff opines that the object with which he collided was one

of a number of concrete bollards placed in a ring around the SBRP Plaza, near 59th Street.[1] At that time the bollards were gray concrete, waist high, and were neither lit nor affixed with reflective tape. Upon collision with the bollard, plaintiff fell backwards and sustained extensive injuries. He now sues the University of Chicago for negligence and premises liability.

## DISCUSSION

Under FED. R. CIV. P. 56(c), summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See also* In re Copper Antitrust Litigation, 436 F.3d 782, 788 (7th Cir.2006). In a motion for summary judgment the moving party has the burden to establish the lack of a genuine issue of material fact. Rozskowiak v. Village of Arlington Heights, 415 F.3d 608, 612 (7th Cir.2005). Upon meeting that burden, the non-moving party must set forth specific facts which demonstrate the existence of a genuine issue for trial. *Id*. The mere existence of some factual dispute will not frustrate an otherwise proper motion for summary judgment; only a genuine dispute over a material fact will defeat summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248 (1986).

When, as here, a federal court hears a case based on diversity of citizenship, the "ultimate responsibility of the district courts is to apply the law of the state in which the court sits with respect to substantive matters." Allstate Ins. Co. v. Menards, Inc., 285 F.3d 630, 633 (7th Cir.2002) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)). Therefore, we will apply Illinois law.

In this case, plaintiff pleads ordinary negligence and premises liability. In order to

---

[1] Although plaintiff does not explicitly remember colliding with a bollard specifically, we have already determined that a reasonable jury could find that plaintiff's injuries were, in fact, caused by a collision with a bollard on the University property. Pollard v. University of Chicago, No. 04-4946, slip op. at 34 (N.D.Il. Dec. 23, 2005).

succeed on a negligence action plaintiff must plead and prove that (1) defendant owed a duty to plaintiff; (2) defendant breached that duty; and (3) plaintiff's injury was proximately caused by defendant's breach of duty. Ward v. K Mart Corp., 554 N.E.2d 223, 226 (Ill.1990). In this motion, defendant focuses its argument primarily on the first prong, arguing that it did not owe plaintiff a duty of care. Specifically, defendant contends that it had neither a duty to protect nor to warn plaintiff of the dangers associated with the concrete bollards because they were openly and obviously dangerous.

Under Illinois law, defendants owed plaintiff, an invitee,[2] a duty of reasonable care to maintain its premises in a reasonably safe condition. Clifford v. Wharton Business Group, LLC, 817 N.E.2d 1207, 1214 (Ill.App.Ct.2004).[3] Illinois courts have guided us to determine whether defendant owed plaintiff a duty by considering the following factors: "(1) the foreseeability that defendant's conduct will result in injury to another; (2) the likelihood of injury; (3) the magnitude of guarding against it; and (4) the consequences of placing that burden upon defendant." Sandoval, 830 N.E.2d at 727. Duty can be determined as a matter of law. Bucheleres v. Chicago Park Dist., 665 N.E.2d 826, 831 (Ill.1996).

The law, however, does not require that a landowner protect an invitee against physical harm related to an open and obvious danger. Bucheleres, 665 N.E.2d at 832 (Ill.1996);

---

[2] Although Illinois courts have held that a landowner owes different duties to trespassers and licensees or invitees, there is no dispute that plaintiff was lawfully on defendant's premises at the time of the accident. (See complaint, ¶ 32; Answer, ¶ 32, 34). Plaintiff is an invitee under the facts of this case. See Sumner v. Hebenstreit, 522 N.E.2d 343, 345 (Ill.App.Ct.1988) (defining an "invitee" as "a person who goes upon the premises of another by an express or implied invitation for the benefit of the landowner or for the mutual benefit of landowner and invitee").

[3] Illinois courts have adopted Section 343 of the Restatement (Second) of Torts regarding premises liability. The restatement finds that "[a] possessor of land is liable to invitee if and only if he or she: (1) knows or by the exercise of reasonable care should know of a condition on the land and should realize that it poses an unreasonable risk of harm; (2) should expect that the invitee will not discover or realize the danger or will fail to protect themselves from it; and (3) fails to exercise reasonable care to protect invitees from the danger." Helms v. Chicago Park Dist., 630 N.E.2d 1016, 1020 (Ill.App.Ct.1994) (citing Genaust v. Illinois Power Co., 343 N.E.2d 465 (Ill.1976)).

Whittleman v. Olin Corp., 832 N.E.2d 932, 935 (Ill.App.Ct.2005); Lange v. Fisher Real Estate Development Corp., 832 N.E.2d 274, 281 (Ill.App.Ct.2005); Sandoval, 830 N.E.2d at 727. The Illinois Supreme Court has held that "'a condition may be so blatantly obvious and in such position on the defendant's premises that he could not reasonably be expected to anticipate that people will fail to protect themselves from any danger posed by the condition.'" Bucheleres, 665 N.E.2d at 832. Whether a condition is considered open and obvious is not a subjective consideration, but rather depends on "the objective knowledge of a reasonable person confronted with the same condition." Sandoval, 830 N.E.2d at 727; Prostran v. City of Chicago, 811 N.E.2d 364, 368 (Ill.App.Ct.2004).

An obviously dangerous condition, however, is not a *per se* bar to liability because defendant may still be liable if he can reasonably anticipate the accident. Belluomini v. Stratford Green Condominium Ass'n, 805 N.E.2d 701, 704-705 (Ill.App.Ct.2004). Therefore, we must ask whether defendant should have foreseen that an invitee would fail to see a bollard, open and obvious during the day, but concealed in the nighttime. Defendant argues that a bollard is an openly and obviously dangerous condition, regardless of darkness, and therefore it could not reasonably have foreseen that someone on its premises would fail to dodge one. Plaintiff responds by arguing that defendant should have foreseen that without the aid of the lighting on the plaza one might fail to see the bollards, causing an injury.

Thus, we find that this case ultimately turns on whether defendant had a duty to illuminate the SBRP Plaza to protect those on its premises from injury, specifically injury from running into a concrete bollard. Although the condition would most likely be considered open and obvious during the light of day (*see* Sandoval, 830 N.E.2d 722; Wregelsworth v. Artco, Inc., 740 N.E.2d 444 (Ill.App.Ct.2000), *Cf.* Ward, 554 N.E.2d 223), we must consider whether defendant's negligence occurred by failing to light the SBRP Plaza to allow persons such as

plaintiff to identify the danger and avoid it.

Defendant cites Morgan v. Bethlehem Steel Corp., 481 N.E.2d 836 (Ill.App.Ct.1985), O'Donnell v. Electro-Motive Division of the General Motors Corp., 499 N.E.2d 608 (Ill.App.Ct.1986), and Lange v. Fisher Real Estate Development Corp., 832 N.E.2d 274 (Ill.App.Ct.2005), to argue that "[c]ourts do not consider open and obvious conditions concealed by darkness to be hidden or latent." Each cited case, however, can be distinguished from the case at hand.

In Morgan, a strict liability failure-to-warn case, the court held that defendant had no duty to place warning lights or reflectors on a flatbed car that was traveling as part of a 36-car railroad train. The court found that the railroad crossing was open and obvious and that "'railroad crossings are dangerous, and that in approaching them a person is required to diligently use the senses of sight and hearing and to exercise a degree of care commensurate with the known danger." Morgan, 481 N.E.2d at 839. Such is not the case in approaching or moving through an open plaza such as the SBRP Plaza. One approaching a railroad crossing should be mindful of passing rail cars; one approaching an open plaza should not necessarily know to be wary of concrete bollards.

In O'Donnell, the court held that defendant was not liable for the death of plaintiff's decedent, who died when his motorcycle collided with unlit traffic lane cables strung between concrete posts in defendant's darkened parking lot. Although the facts of the case appear similar to the case at hand, the plaintiff in O'Donnell was a licensee, and not an invitee. In 1983, when the injury occurred, landowners did not have the same duty of care with respect to licensees and invitees. Making a "significant" comparison to the heightened duty to maintain his premises in a reasonably safe condition for invitees, the court noted that (at that time) a "landowner must only refrain from willfully and wantonly injuring a licensee or

trespasser." O'Donnell, 499 N.E.2d at 611. In our reading of the case, we believe that had the plaintiff been an invitee, as is the plaintiff in this case, the court would have come out differently.

Finally, Lange can be distinguished in a similar manner. In Lange, plaintiff taxi driver followed a woman fleeing into a darkened construction site without paying her fare. After suing the landowner for injuries he sustained when he fell through an open floor, the court held that the landowner owed no duty to plaintiff, a trespasser. The court stated that "under Illinois law, a landowner owes no duty of care to a trespassing adult except to refrain from willfully and wantonly injuring him." Lange, 832 N.E.2d at 277. In this case, defendant owes plaintiff a higher duty of care than the defendants owed the plaintiffs in O'Donnell and Lange.

Part of that heightened duty includes the responsibility of providing an invitee with a reasonably safe means of ingress and egress to defendant's property, both within the premises owned and controlled by defendant and beyond those precise boundaries. Mulvihill v. U.S., 2001 WL 686786, *2 (N.D.Ill.2001); Swett v. Village of Algonquin, 523 N.E.2d 594, 600 (Ill.App.Ct.1988); Harris v. Union Stock Yard & Transit Co. of Chicago, 331 N.E.2d 182, 187 (Ill.App.Ct.1975); Cooley v. Maske, 196 N.E.2d 396 (Ill.App.Ct.1964). It is thus the duty of the inviter to "properly illuminate, give adequate [] warning of, or cause to be repaired a known, dangerous condition." Cooley, 196 N.E.2d at 398. In Cooley, the court held that a tavern owner had a duty to illuminate the brick walk leading up to the tavern and give adequate warning of dangerous conditions thereon, even though the walk was located on city easement. Similarly, in Kittle v. Liss, the court found a triable issue of fact as to whether a tavern owner provided adequate lighting for the stairway providing entrance and exit to the tavern when plaintiff fell on a patch of ice on the top of the stairs. 439 N.E.2d 972, 974 (Ill.App.Ct.1982).

Although the duty to provide a safe means of ingress and egress does not necessarily

apply to open and obvious conditions (*see* Mulvihill, 2001 WL 686786 at *2 ("The duty to illuminate lies for latent or concealed perils of which the owner has knowledge and the invitee does not")), a reasonable jury could find that the alleged lack of lighting on the plaza caused the bollards to become concealed perils. Unlike the case in Swett, in which the court held that the moving traffic plaintiffs encountered, as they crossed the street from defendant's business, was not the type of condition that defendant must warn against, or the case in Newcomm v. Jul, 273 N.E.2d 699 (Ill.App.Ct.1971), in which the court held that defendant did not have a duty to illuminate naturally-accumulated ice on his premises where the step itself was not a dangerous condition, the case at hand more closely parallels the facts of Cooley or Kittle. Therefore, drawing all inferences in favor of plaintiff, we cannot find that the concrete bollard, when cloaked in darkness, was so open and obvious that it obliterated defendant's duty to warn or protect the plaintiff from its dangers.

In the alternative, defendant argues that if there was a duty to illuminate the plaza or the bollards, the lighting was reasonable and therefore, the duty was not breached. Specifically, defendant recites the lighting procedures that were in place the night of the accident and notes that "[t]he University has no record of any lights being inoperable in the SBRP Plaza at the time of plaintiff's accident" (def's mem. at 8). Defendant further contends that "[t]he record is devoid of any such evidence." (*Id.*) Plaintiff responds that "the University asks that this Court ignore the testimony of the witnesses who were on the plaza that night that it was dark and difficult to see" (plf's response at 8).

We approach this issue with the underlying understanding that "[a]lthough the question of whether a duty exists in a particular case is one of law to be determined by the court, the question of whether defendant breached an existing duty is a question of fact to be determined by the jury." Rexroad v. City of Springfield, 796 N.E.2d 1040, 1047 (Ill.2003). *See*

*also* Adams v. Northern Illinois Gas Co., 809 N.E.2d 1248, 1257 (Ill.2004). In this case, plaintiff vehemently claims that the lights in the SBRP Plaza were out, and defendant contends otherwise. And although a plaintiff's "uncorroborated testimony is insufficient to defeat a motion for summary judgment" in some cases (Weeks v. Samsung Heavy Industries Co., Ltd., 126 F.3d 926, 939 (7th Cir.1997)), deposition testimony of other witnesses also suggests that the lights might have been out.[4] Because we view these disputed facts in the light most favorable to the plaintiff, we cannot say that a reasonable jury could only determine that the lights were illuminated. Additionally, outside of offering evidence of the lighting procedures generally followed by the University, and the lack of a reported problem, defendant has offered no testimony of an eyewitness that the lights were illuminated on the evening of the accident. Therefore, we cannot determine this question of fact on a motion for summary judgment.

## CONCLUSION

For the reasons stated above, defendant's motion for summary judgment is denied.

JAMES B. MORAN
Senior Judge, U. S. District Court

March 14, 2006.

---

[4] The following was found in deposition testimony regarding the evening of the accident. In Pollard's deposition: "A: I couldn't tell who was where. You must understand it was pitch-black, nothing. I felt alone." (def's 56.1 statement, ex. A, p. 61:7-9). In Wolter's deposition: "Q: Okay. So your statement that there were no lights illuminating the area – A: There were no lights on the side of the building. In front of the building, I don't know." (*Id.*, ex. C, p. 40:1-4). In Haney's deposition: "Q: Were those lights which are typically on, on that evening when you left with Dr. Pollard? A: I don't remember. Q: Was it dark outside in the plaza area when you left? A: I think it was." (*Id.*, ex. D, p. 36:4-10). In Halpern's deposition: "Q: Are you a medical doctor by training? A: Yes. Q: Okay, Did you do any kind of examination or cursory – A: No, I didn't. I was going to let the – I mean, he seemed to be stable on the ground, and I wasn't going to go poking around. Also, the lighting was terrible. Well, that's probably right. It was terrible. Yeah, I think it was dark." (*Id.*, ex. E, p. 20:7-16). Although we recognize the Dr. Halpern's testimony was relevant to lighting for a medical examination, we also note that a jury could reasonably determine from the testimony that the plaza lights were not illuminated.